IN THE UNITD STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-28-BO-BM

| | |
|---|---|
| BKV GROUP DC, PLLC, | ) |
|     Plaintiff, | ) |
| v. | ) |
| TREELINE ACQUISITION, LLC d/b/a/ TREELINE COMPANIES, | ) |
|     Defendant, | ) |
| and | ) |
| TREELINE ACQUISITION LLC, | )     O R D E R |
|     Plaintiff-in-Counterclaim and Third-Party Plaintiff, | ) |
| v. | ) |
| DISTINCTIVE LIVING DEVELOPMENT LLC, DISTINCTIVE LIVING LLC, DAVID BANTA, CHRISTOPHER HOARD, JACK BOARMAN and JOSEPH JEDLOWSKI, | ) |
|     Third-Party Defendants. | ) |

This matter is before the Court on defendant/counterclaimant Treeline's motion to amend its third-party complaint and counterclaim, and on the motion of third-party defendants Distinctive Living Development LLC, Jedlowski, and Hoard to dismiss that complaint. Third-party defendant

Distinctive Living Development LLC (DLD), Jedlowski, and Hoard moved to dismiss [DE 36] on April 25, 2025. Third-party plaintiff Treeline responded, and DLD replied. On August 22, 2025, third-party defendant Distinctive Living LLC—a different entity than DLD, represented by different counsel—moved to dismiss [DE 47], and third-party plaintiff Treeline responded. On September 12, 2025, Treeline moved to amend its third-party complaint and counterclaim [DE 51]. Both DLD and Distinctive Living responded, and Treeline replied. The Court granted Distinctive Living a time extension to file its reply regarding its motion to dismiss [DE 47] until ten days after the Court enters its order deciding Treeline's motion to amend the third-party complaint and counterclaims. Therefore, Distinctive Living's motion to dismiss is not presently before the Court. A hearing was held before the undersigned on November 7, 2025, in Raleigh, North Carolina. In this posture, the motions to amend and dismiss are ripe for ruling. For the following reasons, the motion to amend the complaint is granted and the motion to dismiss is denied.

## BACKGROUND

The Treeline companies are a group of LLCs (collectively, Treeline) in the real estate development business. Treeline contracted with DLD and Distinctive Living to act as consultants on a project to construct a senior living center. The consultants recommended BKV Group to be the architects. On their recommendation, Treeline hired BKV to do the architectural design work. When the project failed, BKV sued Treeline for breach of contract, quantum meruit, enforcement of lien, and attorney's fees.

Treeline alleges the architectural work was so deficient that it doomed the project to fail. According to Treeline, BKV paid kickbacks to DLD in consideration for securing BKV the contract to work on the senior living center. DLD knew that BKV's architectural work was insufficient, and knew that the project was not viable, but concealed these facts from Treeline in

order to induce Treeline's continuing payments to BKV and so that DLD would continue receiving kickbacks.

Treeline counterclaimed against BKV for breach of contract, breach of covenant of good faith and fair dealing, negligence, tortious interference and civil conspiracy, fraud, and unfair and deceptive trade practices. Treeline also filed a third-party complaint against DLD and Distinctive Living, asserting claims for breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, fraud, and unfair and deceptive trade practices. Additionally, Treeline asserted claims against the principals of BKV, Distinctive Living, and DLD. David Banta and Jack Boarman are both partners at BKV Group. Christopher Hoard is the President and Chief Development Officer of DLD. Joseph Jedlowski is the Chairman and CEO of DLD and is also the CEO of Distinctive Living.

Third Party Defendant Joseph Jedlowski moved to dismiss all the claims against him for lack of personal jurisdiction pursuant to Rule 12(b)(2). Third-party defendants Jedlowski and Hoard moved to dismiss all the claims against them for failure to state a claim pursuant to 12(b)(6). DLD moved to dismiss all tort claims against it, but not the contract claims. Moving together, these parties argue that Treeline's claims sound only in contract, and the pleadings cannot support the tort claims filed against the third-party defendants. Third-party defendant Distinctive Living moved to dismiss based on lack of personal jurisdiction and for failure to state a claim, arguing that although the third-party complaint asserts claims against Distinctive defendants collectively, Distinctive Living is different from Distinctive Living Development, and neither company is liable for the acts or omissions of the other merely because their names are similar.

Treeline then moved for leave to amend its complaint so that it could sharpen its factual allegations, delineate the differences in the claims against Distinctive Living and DLD, plead allegations related to personal jurisdiction, and correct typographical errors.

## DISCUSSION

### I. Treeline's Motion for Leave to Amend its Third-party Complaint and Counterclaim

Under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, a plaintiff may amend their pleading once as a matter of course within twenty-one days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Rule 12(b), (e), or (f). After this time period has expired, amendments under Rule 15(a)(2) are allowed only with the opposing party's written consent or leave of court, which leave should be given freely "when justice so requires." *Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

In opposing leave to amend, third-party defendants rely primarily on their argument that the proposed amendments to the complaint are futile. Treeline provides four reasons for moving to amend its third-party complaint: (1) to clarify its allegations of commercial bribery; (2) to delineate which claims are against which of the "Distinctive" defendants; (3) to allege jurisdictional facts regarding the exercise of personal jurisdiction over Jedlowski, and (4) to correct typographical errors.

Third-party defendants' broadest argument in opposition to the amendment is that tort claims are inappropriate in this contract case. Additionally, they argue that Treeline's proposed amended complaint makes only a nominal change in delineating between the "Distinctive"

defendants. While the original complaint asserted claims against the two "Distinctive" companies lumped together, the proposed amended complaint asserts the same claims against the each of them, and the only change is the acknowledgement that the companies are distinct from one another. Finally, third-party defendants argue that the personal jurisdiction issue as to Jedlowski has been fully briefed, and all the information necessary to decide the motion to dismiss for lack of personal jurisdiction is before the Court. The complaint need not reflect the additional jurisdictional facts contained in the briefing, because the Court may consider information outside the pleadings in deciding a 12(b)(2) motion.

While it is true that the pleadings need not reflect all the relevant jurisdictional facts regarding personal jurisdiction over Jedlowski, the proposed amended complaint is not futile. For example, it alleges Jedlowski's and Hoard's email signature block referenced both Distinctive Living and Distinctive Development. It further alleges that DLD and Distinctive Living held themselves out as "partners." In essence, the proposed amended complaint alleges facts aimed at supporting the theory that both DLD and Distinctive Living were liable for the contract at issue, even though only one signed. Because of the value in Treeline's new allegations, and because the other amendments will only serve to clarify the issues, the Court grants Treeline leave to amend its third-party complaint.

## II. The Court Treats the Motions to Dismiss as Against the Amended Complaint

An amended complaint replaces and supersedes the original complaint so that the original is of no effect. When a motion to dismiss had been directed at the original complaint, and the original complaint is no longer in effect, the motion to dismiss is liable to become moot. Not every amended complaint, however, renders a motion to dismiss moot merely because the motion predated the amendment.

> The Court may--but is not required to--deny as moot a motion to dismiss filed before an amended complaint. "If some of the defects raised in the original motion remain in the new pleading, the court . . . may consider the motion [to dismiss] as being addressed to the amended pleading." Wright, Miller & Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990).

*Scott v. Nuvelle Fin. Servs., LLC*, 2010 U.S. Dist. LEXIS 40225, *5–6. Where, as here, the amended complaint is subject to criticism on the same grounds as the original, the Court may construe a motion to dismiss the original complaint as against the amended complaint.

This is especially true when the movants have reviewed the proposed amended complaint and opposed it on futility grounds. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (proposed amendments are futile if they "could not withstand a motion to dismiss"). As third-party defendants argue that the proposed amendments to the complaint fail to cure the defects present in the original complaint, they have already stated the grounds on which they would move to dismiss the amended complaint if it were effective.

> At the outset, the Court allows plaintiff leave to file his second amended complaint . . . The Court next considers defendants' motion to dismiss, incorporating their arguments based on futility in opposition to plaintiff's motion for leave to amend, as applied to the second amended complaint. *See, e.g., Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 367 n.3 (E.D. Pa. 1996) (where defendant's arguments for dismissal are germane to claims raised in amended pleading, defendant need not be required to file a subsequent motion to dismiss).

*Walls v. Pitt Cnty. Bd. of Educ.*, No. 4:16-CV-195-BO, 2017 WL 151591, at *2 (E.D.N.C. Jan. 13, 2017). Therefore, because movants' futility argument in opposition to amendment supplements their motion to dismiss, and in the interest of judicial economy, the Court construes the motions to dismiss as against the amended complaint. Both DLD and Distinctive Living have moved to dismiss and both have responded in opposition to Treeline's motion for leave to amend its third-party complaint. The Court will treat both the instant motion to dismiss [DE 36], and Distinctive Living's motion to dismiss [DE 47] when it ripens, as motions against the amended complaint.

### III. Jedlowski's Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the plaintiff must make a prima facie showing that personal jurisdiction exists, and a court construes all facts and inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). A court may consider affidavits attached to a motion when determining whether the plaintiff has made a prima facie showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676.

The exercise of personal jurisdiction is lawful "if [1] such jurisdiction is authorized by the long-arm statute of the state in which it sits and [2] application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). North Carolina's long-arm statute is coextensive with the due process clause. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the Court must only decide whether exercising personal jurisdiction over Jedlowski would offend due process. *Id.*

Two types of personal jurisdiction are recognized: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017). To satisfy due process, a plaintiff asserting general jurisdiction must establish that the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Jedlowski is not domiciled in North Carolina, and there are no facts pled, or included in Treeline's proposed amended complaint, that can support a finding of general personal jurisdiction over him.

"Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operation*, 564 U.S. at 919 (internal alterations, quotation, and citation omitted). The Court must analyze "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

The Fourth Circuit has set forth a list of nonexclusive factors to weigh in considering the first prong of the specific personal jurisdiction test, purposeful availment:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Id.*

Here, Jedlowski has no physical presence and no property in North Carolina. However, Jedlowski involved himself in a multi-million-dollar development project meant to take place in North Carolina. He took on obligations related to the project, and sought to reap continuing rewards from it that would require extensive involvement with the state for a long period of time. Even if he was not the "point-man" for the project, his involvement was substantial and directed

at the state of North Carolina. By committing himself to a large project that would take place in North Carolina, Jedlowski purposefully availed himself of the privilege of doing business there.

The second prong of the specific jurisdiction test is trivially satisfied. Jedlowski has contacts with North Carolina based on his involvement in the project to construct the senior living center. The claims in this case arise out of those activities he directed at North Carolina, namely, his involvement in the project.

Third and finally, exercising personal jurisdiction over Jedlowski is constitutionally reasonable. The additional factors a court may consider include

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009). Haling Jedlowski into North Carolina court would not violate traditional notions of fair play and substantial justice. Furthermore, as Treeline noted in its memorandum in opposition to Jedlowski's motion to dismiss for lack of personal jurisdiction, it "makes little sense for all the claims except the claims against Mr. Jedlowski to proceed in North Carolina only for a claim against Mr. Jedlowski to proceed separately in New York, perhaps with conflicting results." Accordingly, the Court has personal jurisdiction over Jedlowski.

### IV. DLD, Jedlowski, and Hoard's Motion to Dismiss for Failure to State a Claim

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. See Fed. R. Civ. P. 12(b)(6) The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A complaint should not be dismissed if it "provides sufficient detail about [plaintiff's] claim to show that he has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 396 (4th Cir. 2014).

Treeline asserts six claims against DLD: breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, fraud, and unfair and deceptive trade practices. Treeline asserts three claims against Hoard and Jedlowski: tortious interference and civil conspiracy, fraud, and unfair and deceptive trade practices. Hoard and Jedlowski move to dismiss all claims asserted against them, while DLD moves to dismiss only the tort claims and the breach of fiduciary duty claim.

*a. DLD's Motion to Dismiss for Failure to State a Claim*

Movants argue that tort claims are inappropriate in this contract case. They argue the tort claims are barred by the economic loss rule, and the only claims in this case should sound in contract because all damages arise from alleged breach of contract.

> "[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due

to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract."

*Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65 (1992). However, in cases where the defendant has breached an extra-contractual duty, certain tort claims may proceed. *See Crescent University City Venture, LLC v. Trussway Manufacturing, Inc.*, 376 N.C. 54, 58–59 (2020). Treeline's alleged damages do not arise merely out of DLD's failure to perform its contract, but out of alleged fraud.

[W]hile claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, "[t]he law is, in fact, to the contrary: a plaintiff may assert both claims[.]" *Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 34 (2016) (citing *Jones v. Harrelson & Smith Contractors, LLC*, 194 N.C. App. 203, 214 (2008), aff'd, 363 N.C. 371 (2009)). Facts regarding the kickback payments and underlying fraud are alleged sufficiently to carry Treeline's pleading burden as to its tort claims.

DLD also moved to dismiss the breach of fiduciary duty claim. The elements of a breach of fiduciary duty claim are "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019) (citing *Green v. Freeman*, 367 N.C. 136, 141 (2013)). DLD argues that no fiduciary relationship has arisen. "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir.1998) (internal quotation marks and citations omitted). Treeline contracted with DLD in the first place because DLD had technical knowledge of the senior living center construction business. Treeline was allegedly so dependent on DLD that it could not even, by itself, determine

whether the project was commercially viable. This dependence is sufficient at the motion to dismiss stage to sustain a claim for breach of fiduciary duty.

The civil conspiracy, unfair and deceptive trade practices, and fraud claims asserted against DLD are also properly pled for the same reasons as discussed below.

*b. Jedlowski's and Hoard's Motion to Dismiss for Failure to State a Claim*

While the complaint and proposed amended complaint list Treeline's "tortious interference and civil conspiracy" claims under one count, they are better treated as separate.

"In order to state a claim for civil conspiracy, a complaint must allege 'a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury.'" *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416 (2000) (quoting *Henry v. Deen*, 310 N.C. 75, 87 (1984)). In addition to the alleged kickback payment, Treeline alleges Hoard and Jedlowski concealed the unprofitable nature of the project and induced Treeline's continuing investments. These allegations state a claim for civil conspiracy. All the relevant parties at this stage—DLD, Jedlowski, Hoard—allegedly played a part, either receiving the bribe or inducing Treeline to continue paying for the fruitless project.

Similarly, Treeline has stated a claim for tortious interference.

> The tort of interference with contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988). While Treeline may advance more than one theory of the purpose and inception of the kickback payments, its allegations are sufficient to state a claim. Hoard and Jedlowski knew of the contract between DLD and Treeline. By accepting kickbacks, Hoard and Jedlowski induced DLD to breach its contractual duties to

Treeline—DLD had to defraud Treeline to keep the kickbacks coming. On this theory, which is sufficiently alleged in the proposed amended complaint, Treeline has stated a claim for tortious interference.

To state a fraud claim, a complaint must allege "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (1974). Treeline provides multiple material facts allegedly concealed: the conspiratorial kickback scheme between BKV and DLD and the deficiency of BKV's architectural work. Movants argue that they fail to state a claim because they fail to provide the requisite particularity. In particular, movants note there is no description of the time, place, and contents of the false statements." But Treeline need not allege a false representation to state a claim here, as their theory is that the movants concealed material facts from them. The fraud claim is sufficiently pled.

To establish a prima facie case of unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 303 (2004). The alleged kickbacks serve as the unfair or deceptive act, especially coupled with fraudulently inducing Treeline to continue paying into a doomed project. Treeline states a plausible claim for unfair and deceptive trade practices.

## CONCLUSION

For the foregoing reasons, Treeline's motion for leave to amend its third-party complaint and counterclaim [DE 51] is GRANTED. Distinctive Living Development LLC, Jedlowski, and Hoard's motion to dismiss [DE 36] is DENIED. The discovery period will close on January 5, 2026. No more than four depositions by each side. A jury trial will be set for Monday, February 9, 2026, in Elizabeth City, North Carolina. United States Magistrate Judge Brian Meyers will conduct the pretrial conference.

SO ORDERED, this **13** day of November 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE