IN THE UNITD STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-28-BO-BM

BKV GROUP DC, PLLC,                          )
                                             )
            Plaintiff,                       )
                                             )
    v.                                       )
                                             )
TREELINE ACQUISITION, LLC d/b/a/             )
TREELINE COMPANIES,                          )
                                             )
            Defendant,                       )
                                             )
    and                                      )
                                             )
TREELINE ACQUISITION LLC,                    )            O R D E R
                                             )
            Plaintiff-in-Counterclaim        )
            and Third-Party Plaintiff,       )
                                             )
    v.                                       )
                                             )
DISTINCTIVE LIVING                           )
DEVELOPMENT LLC, DISTINCTIVE                  )
LIVING LLC, DAVID BANTA,                     )
CHRISTOPHER HOARD, JACK                      )
BOARMAN and JOSEPH JEDLOWSKI,                )
                                             )
            Third-Party Defendants.          )

This matter is before the Court on third-party defendant Distinctive Living, LLC
(Distinctive Living)'s motion to dismiss the claims asserted against it by third-party plaintiff
Treeline Acquisition, LLC (Treeline). [DE 47]. Treeline has responded in opposition [DE 50], and

Distinctive Living has replied [DE 63]. A hearing was held before the undersigned on November 7, 2025, in Raleigh, North Carolina. In this posture, the motion is ripe for ruling. For the following reasons, the motion to dismiss is denied.

BACKGROUND

The Treeline companies are a group of LLCs (collectively, Treeline) in the real estate development business. Treeline contracted with Distinctive Living Development LLC (DLD) to act as consultants on a project to construct a senior living center. Treeline alleges DLD would manage the development of the senior living center, and Distinctive Living would operate the facilities upon completion of the construction. [DE 62, p. 10]. The consultants recommended BKV Group to be the architects. On their recommendation, Treeline hired BKV to do the architectural design work. When the project failed, BKV sued Treeline for breach of contract, quantum meruit, enforcement of lien, and attorney's fees.

Treeline alleges the architectural work was so deficient that it doomed the project to fail. According to Treeline, BKV paid kickbacks to DLD in consideration for securing BKV the contract to work on the senior living center. DLD knew that BKV's architectural work was insufficient, and knew that the project was not viable, but concealed these facts from Treeline in order to induce Treeline's continuing payments to BKV and so that DLD would continue receiving kickbacks.

Treeline counterclaimed against BKV and asserted third-party claims against DLD and Distinctive Living. Together, DLD, Jedlowski, and Hoard moved to dismiss the third-party claims against them. On November 13, the Court entered an order denying their motion to dismiss and granting Treeline leave to amend its complaint. Separately, Distinctive Living filed its motion to dismiss which is presently before the Court.

2

Treeline asserts six claims against Distinctive Living: (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) breach of fiduciary duty, (4) civil conspiracy, (5) fraud, and (6) unfair and deceptive trade practices. Distinctive Living moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

DISCUSSION

## I. Distinctive Living's 12(b)(6) Motion to Dismiss for Failure to State a Claim

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. See Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A complaint should not be dismissed if it "provides sufficient detail about [plaintiff's] claim to show that he has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 396 (4th Cir. 2014).

3

*a. Partnership by Estoppel*

Treeline entered a contract with DLD, but not with Distinctive Living. Treeline seeks to hold Distinctive Living liable for the same claims asserted against DLD on the theory that the two held themselves out as partners. Distinctive Living retorts that Treeline has not pled facts alleging actual partnership. Treeline has, however, pled facts supporting a theory of partnership by estoppel.

North Carolina codifies partnership by estoppel at N.C.G.S. § 59-46.

(a) When a person, by words spoken or written, by conduct, or by contract, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner, he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made. (1) When a partnership liability results, he is liable as though he were an actual member of the partnership.

N.C.G.S. § 59-46; *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 433–34 (2012).

The essentials of equitable estoppel or estoppel *in pais* are a representation, either by words or conduct, made to another, who reasonably believing the representation to be true, relies upon it, with the result that he changes his position to his detriment. It is essential that the party estopped shall have made a representation by words or acts and that someone shall have acted on the faith of this representation in such a way that he cannot without damage withdraw from the transaction.

*Wiggs v. Peedin*, 194 N.C. App. 481, 488 (2008) (citing *Volkman v. DP Assocs.*, 48 N.C. App. 155, 158 (1980)).

Treeline alleges it "entered into discussions with Third-Party Defendant[s] DLD and Distinctive Living to determine whether they would be an appropriate firm to act as Treeline's agent, advocate and trusted advisor for the Project." [DE 62, ¶ 14]. Third-party defendant Hoard

4

is the president of DLD, and third-party defendant Jedlowski is the CEO of both DLD and Distinctive Living. Hoard and Jedlowski "represented themselves to be the sole operating principals of what they termed 'Distinctive,' with full authority to act on behalf of, control, and legally bind 'Distinctive.'" *Id.* at ¶ 15. "Hoard also represented that George Draghiceanu [Distinctive Living's Chief Operating Officer] was his 'partner' and 'our COO and oversees all operations.' Treeline justifiably relied on this representation that DLD and Distinctive Living and/or their officers and employees were 'partners.'" *Id.* at ¶ 16. At Jedlowski's direction, Draghiceanu travelled to North Carolina and met with a Treeline representative regarding the project. *Id.* at ¶ 9.

"Treeline had no prior experience developing senior housing facilities," and sought consultants with knowledge comprehensive enough "to facilitate [Treeline's] entry into this segment of the market." *Id.* at ¶ 13. As Treeline alleges, Jedlowski, DLD, and Distinctive Living represented that they could "manage every phase of a senior living project, from market research, analysis and feasibility reviews, to strategic planning, zoning and permit approvals, through comprehensive development and construction management, including negotiation and management of design and construction contracts, logistics management and *facility operations once a project was fully constructed.*" *Id.* at ¶ 19 (emphasis added). Treeline also alleges that this labor was divided between DLD and Distinctive Living, with DLD overseeing construction and Distinctive Living overseeing operations once the facility was constructed. *See id.* at p. 10; *see also id.* at ¶ 285.

The above allegations support a theory of partnership by estoppel. Given the circumstances, the amended complaint creates a plausible inference that Jedlowski spoke in his capacity as CEO of Distinctive Living when he represented that his company had the ability to

operate the senior living facility once it was constructed. *See id.* at ¶ 19. Also considering Draghiceanu's venture to North Carolina to meet with a Treeline representative and inspect the property, the complaint plausibly alleges words and acts by which Distinctive Living held itself out as a partner of DLD.

Treeline sufficiently alleges that it relied to its detriment on the representation that DLD and Distinctive Living were partners. Treeline sought consultants who could oversee the entirety of the project; DLD would be responsible for overseeing operations once the senior living center was constructed. Treeline's reasonable belief that it would be doing business with a partnership having comprehensive knowledge of the senior living industry materially induced Treeline's contracting with DLD. By contracting with DLD, Treeline changed its position to its detriment, entering contracts from which it could not withdraw without damage. *See Best Cartage*, 219 N.C. App. at 433–44; *Wiggs*, 194 N.C. App. at 488.

*b. Claims*

Treeline asserts claims against Distinctive Living for breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, fraud, and unfair and deceptive trade practices. Treeline asserted the same claims against DLD, and the Court allowed those claims to survive DLD's motion to dismiss. Many of Treeline's allegations against DLD are applicable to Distinctive Living. Having established that Treeline pled a partnership by estoppel sufficiently at the 12(b)(6) stage, the Court will permit the claims against Distinctive Living to proceed as well.

**II. Personal Jurisdiction**

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the

plaintiff must make a prima facie showing that personal jurisdiction exists, and a court construes all facts and inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). A court may consider affidavits attached to a motion when determining whether the plaintiff has made a prima facie showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

The exercise of personal jurisdiction is lawful "if [1] such jurisdiction is authorized by the long-arm statute of the state in which it sits and [2] application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). North Carolina's long-arm statute is coextensive with the due process clause. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the Court must only decide whether exercising personal jurisdiction over Distinctive Living would offend due process. *Id.*

Two types of personal jurisdiction are recognized: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017). To satisfy due process, a plaintiff asserting general jurisdiction must establish that the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Distinctive Living's citizenship is not in North Carolina, and there are no facts pled, or included in Treeline's proposed amended complaint, that can support a finding of general personal jurisdiction over it.

"Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operation*, 564 U.S. at 919

7

(internal alterations, quotation, and citation omitted). The Court must analyze "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

The Fourth Circuit has set forth a list of nonexclusive factors to weigh in considering the first prong of the specific personal jurisdiction test, purposeful availment:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Id.*

This Court has personal jurisdiction over Distinctive Living for similar reasons as those expressed in its order of November 13, 2025. Jedlowski's representations to Treeline about DLD's and Distinctive Living's capabilities, in an attempt to initiate business activities that would take place in North Carolina, are prime examples of reaching into the state. The multi-million-dollar project was extensive, and—especially as to Distinctive Living's expectation that it would oversee the operations of the senior living center once constructed—would require lasting performance in North Carolina. Furthermore, Draghiceanu made in-person contact with a Treeline representative in North Carolina. And Treeline's claims arise out of these contacts, which satisfies the second prong of the specific personal jurisdiction test.

To determine whether it would be constitutionally reasonable to exercise personal jurisdiction over a defendant, the factors a court may consider include

8

(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp.*, 561 F.3d at 279. Haling Distinctive Living into North Carolina court would not violate traditional notions of fair play and substantial justice. As Treeline noted, Distinctive Living's officers and employees are "going to be required to produce significant discovery, whether through written discovery as parties, or subpoenas as witnesses, and sit for depositions in this case regardless of the outcome of this Motion." [DE 50, p. 7]. Furthermore, similar to the reasoning Treeline applied to Jedlowski, Treeline notes that it makes "little sense for all the claims except the claims except the claims against Distinctive Living . . . to proceed in North Carolina only for a claim against Distinctive Living . . . to proceed separately in New York, perhaps with conflicting results, particularly where Distinctive Living had hoped to profit handsomely from this [North Carolina] project." *Id.* The Court has personal jurisdiction over Distinctive Living.

CONCLUSION

For the foregoing reasons, Distinctive Living's motion to dismiss [DE 47] is DENIED.

SO ORDERED, this **15** day of December 2025.

*Terrence Boyle*

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE