# Exhibit 4

# Defendant Treeline Acquisition LLC's Responses and Objections to Distinctive Living Development LLC's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION FILE NO. 5:25-cv-00028-BO-BM

| | | |
|---|---|---|
| BKV GROUP DC, PLLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TREELINE ACQUISITION, LLC d/b/a | ) | |
| TREELINE COMPANIES, | ) | |
| | ) | |
| Defendant. | ) | **DEFENDANT TREELINE** |
| | ) | **ACQUISITION LLC'S** |
| and | ) | **RESPONSES AND OBJECTIONS** |
| | ) | **TO DISTINCTIVE LIVING** |
| TREELINE ACQUISITION LLC, | ) | **DEVELOPMENT LLC'S FIRST** |
| | ) | **SET OF INTERROGATORIES,** |
| Counterclaim Plaintiff / | ) | **REQUESTS FOR PRODUCTION** |
| Third-Party Plaintiff, | ) | **OF DOCUMENTS AND** |
| | ) | **REQUESTS FOR ADMISSION** |
| v. | ) | |
| | ) | |
| DISTINCTIVE LIVING | ) | |
| DEVELOPMENT LLC, DISTINCTIVE | ) | |
| LIVING LLC, DAVID BANTA, | ) | |
| CHRISTOPHER HOARD, JACK | ) | |
| BOARMAN and JOSEPH JEDLOWSKI, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

Defendant Treeline Acquisition LLC ("Treeline") hereby answers,

responds, and objects to Third-Party Defendant Distinctive Living Development

LLC's ("DLD") First Set of Interrogatories, Requests for Production of Documents and

Requests for Admission.

Case 5:25-cv-00028-BO-BM   Document 102-5   Filed 03/20/26   Page 2 of 49

## PRELIMINARY STATEMENT

Defendant is presently pursuing discovery and investigation of the facts and law relating to this case. These objections, answers, and responses are based on documents and information which are now available and known to Defendant. For these reasons, these objections, answers, and responses are being served without prejudice to Defendant's right to amend, change, modify, supplement, or otherwise alter its objections, answers, or responses in a manner consistent with the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

1. Treeline objects to the requests of BKV to the extent that they seek documents prepared or made by, sent or delivered to, received by, previously made available to, or in the possession, custody, or control of BKV.

2. Treeline objects to BKV's discovery requests to the degree that such requests seek to impose any obligation greater than the obligations imposed by the Federal Rules of Civil Procedure and any other applicable law governing the scope of discovery.

3. Treeline objects to each discovery request by BKV to the extent that it calls for the waiver of the attorney–client privilege and/or the work-product immunity.

4. In providing these objections, answers, and responses, Treeline does not in any way waive or intend to waive, but rather reserve:

a. All objections to foundation, competency, relevancy, materiality, and admissibility;

b. All rights to object on any ground to the use of any of the answers or responses provided in any subsequent proceedings, including the trial of this or any other action;

c. All objections to vagueness and ambiguity;

d. All rights to object on any ground to any further discovery request propounded by BKV to Treeline; and,

e. The attorney–client privilege, work-product immunity, and every other applicable privilege and limitation on discovery.

## INCORPORATION

For each of the following objections, answers, and responses, Treeline incorporates by reference the General Objections set forth above as if restated in their entirety.

## DEFINITIONS

In providing these objections, answers, and responses, the following terms and phrases shall be subject to the responding definitions:

1. "Irrelevant and immaterial" shall mean that the discovery request seeks information which, if existing, is irrelevant and/or immaterial to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Further, "irrelevant" means that the information sought does not help to prove a fact or matter in dispute in this action, and "immaterial" means

3

that the information sought does not relate in any manner to the issues presented by this action.

2. "Objects" shall mean that Treeline objects to the discovery request for the reasons stated in addition to those set forth in the General Objections set forth above.

3. "Oppressive" shall mean that the discovery request asks Treeline to undertake the undue burden and expense of seeking a category of information and matters which are not relevant or material and/or does not represent a request for information reasonably calculated to lead to the discovery of admissible evidence.

4. "Overly broad" shall mean that the discovery request seeks information, a category of information, or the identification of information which is so broad as to directly or indirectly compromise or undermine rights under the attorney–client privilege and/or work-product immunity, or that the discovery request, as worded, is over-inclusive as it relates to the subject matter of this action.

5. "Privilege" and "privileged" shall mean that the discovery request seeks information which is subject to attorney–client privilege, to work-product immunity, or to some other applicable privilege, and is not discoverable.

6. "Subject to and without waiving this (these) objection(s)" shall mean that the objection(s) and response provided by Treeline is (are) subject to, limited by, and without waiver of the General Objections set forth above and to such additional objections as are made to the specific discovery request.

7. "Unduly burdensome" shall mean that the discovery request seeks information that puts Treeline at an unreasonable or unfair hardship in responding because of the time and expense required to develop or produce such information in response to the discovery request, when compared to the importance, if any, of the information sought by the discovery request.

8. "Unreasonably cumulative" shall mean that the discovery request seeks information which calls for duplicative, redundant, disproportionate and/or excessive discovery which is beyond the scope and spirit of the applicable discovery rules, and any information provided in response is not likely to promote narrowing of the issues or development of the facts in preparation for trial.

9. "Unreasonably designated" shall mean that the discovery request does not describe or designate an item or category of information or documents requested with reasonable particularity.

10. "Unrelated matters" shall mean that the discovery request is so broad that it calls for information which, if existing, stems from unrelated matters or transactions or concerns circumstances which have no bearing on this action, are irrelevant and/or immaterial, and do not reasonably relate to admissible evidence or to the discovery of matters or information leading to admissible evidence.

11. "Vague and ambiguous" shall mean that the discovery request, or material portions thereof, is capable of different meanings or understandings, is unreasonably unclear, confusing and unintelligible, does not provide sufficient detail

or clarity to define the information sought such that Treeline can formulate a meaningful answer, and/or calls for speculation by Treeline.

12. "Work-product" shall mean information or documents which are within the scope of the work-product doctrine and which are immune from discovery.

## FIRST SET OF INTERROGATORIES

1. Identify all persons who contributed in any way to the answers of these interrogatories or were involved in the accumulation of information for the purpose of answering these interrogatories, include their name, address, telephone number, employer's name, and title.

**RESPONSE: Objection. Treeline objects and the grounds and to the extent said Interrogatory is overly broad, unduly burdensome, and seeks information obtained in anticipation of litigation and/or trial and protected by the attorney-client privilege or work product doctrine. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Michael Schor, Daniel Schor, and Glenn Schor with the assistance of counsel. These individuals can be contacted through counsel.**

2. Identify all persons with knowledge of the facts, matters and circumstances alleged in the Complaint, Third-Party Complaint, or other pleadings in this Lawsuit and for each such person identify the relationship, if any, with you.

6

For each person identified, state the information that the person has with respect to the allegations of the Complaint, Third-Party Complaint, or other pleadings.

**RESPONSE: Objection. Treeline objects and the grounds and to the extent said Interrogatory is overly broad, unduly burdensome, and seeks information obtained in anticipation of litigation and/or trial and protected by the attorney-client privilege or work product doctrine. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Please refer to the Rule 26(a)(1) disclosures provided by the Parties in this case. In addition to the witnesses identified therein, Treeline expects the expert(s) retained by the parties to have discoverable information.**

3.    Identify any person whom may be a designated expert witness in any field relating to this case on your behalf.  With reference to each person, please state the expert's full name and address, the expert's present employment or occupation, the area in which you contend he or she is an expert, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion so held by such expert.

**RESPONSE: Treeline has not yet determined which expert(s) it may use at trial to present evidence. All testifying experts will be disclosed**

in accordance with and to the extent required by Rule 26(a)(2) and any applicable Court order.

By way of further response, Treeline expects that the Parties to this case and fact witnesses may provide testimony that constitutes expert testimony. As discovery is ongoing, Treeline reserves the right to amend or supplement this response to the extent necessary.

4.     Describe you and your officers' previous involvement in the development of commercial real estate properties.  Identify the location and type of project for each identified project.  Identify whether any entity provided construction management services for the identified projects.

RESPONSE: Objection. Treeline objects on the grounds that said Interrogatroy is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, but subject to it, Treeline responds as follows:

Treeline has been in the business of commercial real estate development since 1985. Over the past 40 years, Treeline has been involved in real estate development or management of commercial real estate. Treeline has been involved in construction projects both with and without entities performing construction management services on its behalf. Prior to this Project, Treeline had never been involved in developing,

constructing, investing in, financing, or managing/operating a senior living project nor had Treeline ever built a building from ground up without a co-development partner with substantial experience in doing so.

5.    Identify all companies affiliated with Treeline Companies and/or Treeline Acquisition, LLC.  Identify the members/owners of each identified entity.

**RESPONSE: Objection. Treeline objects on the grounds that said Interrogatroy is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Michael Schor and Daniel Schor are each equal members of Treeline Acquisition, LLC.**

6.    Identify and describe how you came to work with the Distinctive Development Defendants.

**RESPONSE: Michael Schor participated in meetings with prospective institutional investors who suggested that the senior housing market, specifically the active adult community living market, was a growth space. Michael Schor and Daniel Schor discussed this a potential new market for Treeline. Around this time, Treeline had been focusing on industrial space in North Carolina for development. Treeline had identified**

9

land that was not suitable for industrial development but might be suitable for senior housing. Michael Schor and Daniel Schor decided to search for an advisor/consultant who might be able to assist Treeline with identifying sites that were suitable for senior housing development. Daniel Schor conducted online research for advisors/consultants in this area that might be able to assist Treeline. Daniel Schor visited the Distinctive Healthcare website and reached out to request more information. Mr. Jedlowski responded on behalf of Distinctive Healthcare and a phone call or video conference occurred in January 2023 between Mr. Jedlowski and Daniel Schor. Mr. Jedlowski also sent marketing materials and then subsequent phone calls or video conferences occurred with Daniel Schor, Michael Schor, Glenn Schor, Mr. Jedlowski, and Mr. Hoard. During these calls, Mr. Jedlowski and Mr. Hoard represented that Distinctive was one team under one umbrella, a fact clearly borne out by their marketing materials and websites. This, among other representations during these calls and in the materials, led to the execution of the Distinctive Agreement on February 7, 2023 that is attached to Treeline's First Amended Answer, Counterclaim, and Third-Party Complaint as Exhibit A.

7. Identify what research and due diligence you did before you decided to develop a senior housing development project.

RESPONSE: Objection. Treeline objects on the grounds that said Interrogatory is overly broad and unduly vague. Without waiving this objection, but subject to it, Treeline responds as follows:

In addition to the information discussed in Answer to Interrogatory No. 6, Treeline relied Sarah Godwin of Foundry Commercial to help identify possible land for development and she ultimately identified the Flowers Plantation parcel. Not having any experience in the senior housing market, Treeline relied on DLD and Distinctive Living for research and due diligence. Treeline relied exclusively on DLD and Distinctive Living to, among other things, perform market research, analyze possible rental revenue, estimate operating costs, and recommend an architect. Of note, these are precisely the services advertised on the Distinctive websites. Treeline did not revise Distinctive's financial proformas. When Treeline asked questions about them, Mr. Hoard and Ryan Herchenroether, who Treeline believed to be either or both a DLD or Distinctive Living employee, would make any changes. Treeline also relied upon the initial work of BKV, including its construction estimate, in February and March 2023 before deciding to develop the Project.

By way of further response, please refer to Answer to Interrogatory No 6 above.

8. Identify and describe how and when you found the Property as a potential site for the Project.

**RESPONSE: Sarah Godwin of Foundry Commercial identified the Flowers Plantation parcel as a potential site in early 2023.**

9. Identify all due diligence you did before deciding to enter a purchase contract for the Property.

**RESPONSE: Objection. Treeline objects on the grounds that said Interrogatory is overly broad and unduly vague. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Prior to entering into the contract with Flowers on May 25, 2023, Treeline relied on BKV and DLD/Distinctive Living to perform due diligence on its behalf, as provided in Treeline's agreements with these Parties. Treeline did whatever was advised by DLD/Distinctive Living and BKV, including requesting information from Flowers about the site and coordination introductions of their personnel to Mr. Stocks and other representatives for Flowers. Pursuant to the March 5, 2023 Letter Agreement, BKV was to perform Phase I Concept and Phase IA Entitlement from March 6, 2023 through May 26, 2023. This included preparing an Entitlement/Site Plan and performing a preliminary Code Analysis, which Treeline relied upon as part of the decision to enter the purchase contract. Treeline also relied on the financial proformas and the representations of**

12

**Mr. Hoard and Mr. Jedlowski, each of whom held themselves out as experts in the senior living development field, in deciding to enter into the purchase contract.**

**By way of further response, please refer to Answers to Interrogatories 6, 7, and 8 above. By way of further response, and in accordance with Fed. R. Civ. P. 33(d), please refer to the documents and communications produced and to-be produced during the discovery phase of this case.**

10. Identify all entities and persons with whom you contracted or consulted with regarding the Project, including any persons you contracted or consulted in making the decision to not go forward with the Project, and identify the services provided by each and how much you paid each.

**RESPONSE: Objection. Treeline objects and the grounds and to the extent said Interrogatory is overly broad, unduly vague, unduly burdensome, and seeks information obtained in anticipation of litigation and/or trial and protected by the attorney-client privilege or work product doctrine. Without waiving this objection, but subject to it, Treeline responds as follows:**

**In addition to counsel, Treeline consulted or contracted with the Distinctive entities and principals, BKV, Douglas, representatives of**

Flowers, Ziegler, and various potential sources of financing before determining that the Project was not economically viable.

By way of further response, and in accordance with Fed. R. Civ. P. 33(d), please refer to the documents and communications produced and to-be produced during the discovery phase of this case.

11.     Identify all contracts you entered related to the Property or the Project.

RESPONSE: Objection. Treeline objects and the grounds and to the extent said Interrogatory is overly broad and unduly vague. Without waiving that objection, but subject to it, Treeline responds as follows:

Treeline entered into the February 7, 2023 agreement with DLD, the March 5, 2023 BKV Letter Agreement, the December 12, 2023 BKV AIA Contract, and the May 25, 2023 contract with Flowers.

By way of further response, and in accordance with Fed. R. Civ. P. 33(d), please refer to the documents and communications produced and to-be produced during the discovery phase of this case.

12. Identify all architects you considered for the Project, including whether you considered hiring a different architect for the Project after hiring BKV.

**RESPONSE: Mr. Hoard and Mr. Jedlowski only recommended BKV for the Project and Treeline relied upon their advice. No other architects were hired.**

13. Describe and identify the date you came to know of each any alleged defect, code violation, permitting issue, geotechnical issue, and/or design issue concerning Project.

**RESPONSE: Objection. Treeline objects and the grounds and to the extent said Interrogatory is overly broad, unduly burdensome, and seeks information obtained in anticipation of litigation and/or trial and protected by the attorney-client privilege or work product doctrine. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Treeline does not have a written record of the precise date it discovered each and every defect, code violation, permitting issue, geotechnical issue, and/or design issue concerning the Project. Treeline refers to the documents previously produced and to-be produced as part of the discovery process for further dates various issues were discussed.**

**In general, Treeline became aware of significant issues with BKV's work after the hiring of The Douglas Company ("Douglas") in or**

15

around October 2023. By December 2023, BKV had conceded that there were substantial issues with its design but the extent of those deficiencies were not fully disclosed or apparent to Treeline until Douglas began its work.

On May 2, 2024, a meeting between BKV, Treeline, and Distinctive occurred. Following the meeting, Chris Palkowitsch, on information and belief an employee or contractor of BKV, emailed a 5-page PDF of the "options we reviewed in the meeting." On page 2 of the PDF showing the "current plan," BKV had placed the building both in an existing wetland and required buffer and in an area marked "AREA TO AVOID." BKV provided two options to resolve this problem, both of which required the purchase of additional land, shifting the building, and a material redesign. Around this time, Treeline definitively concluded that the contemplated Project, based on size and the required amenities that were essential to the business plan for the Project, could not be built upon this site. Either the additional land would need to be acquired or the building size and amenities would need to be reduced, both of which would have required substantial additional cost and would have damaged the business plan for the Project, making it economically unfeasible.

By way of further response, Treeline expects the response to this Interrogatory to be the subject of expert testimony and disclosure. Treeline reserves the right to and will supplement its response to the extent required by Fed. R. Civ. P. 26(b) and any applicable order from the Court.

14.	Describe what you mean by your allegations that the Project became "not financially viable" and the support you have for same.

**RESPONSE: Treeline relied upon the proformas prepared by DLD and Distinctive Living LLC to determine whether the project was financially viable. The proformas included significant assumptions about the number of rentable units and the market price for renting those units, the square footage of the building, the scope of amenities, and the construction costs. As the number of units, the size of the building, and the amenities decreased and/or the construction costs increased, the profitability of the project decreased. With decreasing profitability, and the failure of BKV to prepare usable construction documents, Treeline could not obtain commercially reasonable financing for the Project. Had Treeline obtained financing for the Project in an amount necessary to construct a building of the contemplated size and amenities (i.e. by purchasing more land, substantial site alterations including retaining walls, or with steel construction) or chosen to move forward with a smaller building and reduced amenities, BKV, DLD, and Distinctive Living would have all earned substantial fees. In contrast, Treeline would have incurred losses or minimal profits depending on market conditions. That rendered the Project not financially viable.**

By way of further response, and in accordance with Fed. R. Civ. P. 33(d), please refer to the documents and communications produced and to-be produced during the discovery phase of this case.

15.    Identify when you determined the Project was allegedly "not financially viable", how you reached that conclusion, and what documents and persons you relied upon in making that decision.

**RESPONSE: Treeline does not know the exact date it formally determined the Project was not financially viable. On or shortly after May 2, 2024, Treeline concluded that the contemplated Project, based on size and the required amenities that were essential to the business plan for the Project, could not be built upon this site. At that point, it became clear that either additional land would need to be acquired or the building size and amenities would need to be reduced, both of which would have required substantial additional cost and would have damaged the business plan for the Project. Treeline explored both of these options during the period from May through August of 2024, including numerous discussions with Flowers to resurrect a financially viable transaction, but ultimately Treeline was not able to do so. As a result, the determination that the Project was "not financially viable" arrived throughout 2024 including and through the time that BKV filed a claim of lien on the property. Treeline reached that determination by reviewing the proformas and communicating with BKV,**

18

**DLD, Distinctive Living, Flowers, Ziegler, Douglas, and others. Ultimately, Treeline mitigated the damages of the parties herein by negotiating with Flowers to terminate the purchase contract and to refund to Treeline the earnest money deposit, which Flowers had no contractual obligation to do.**

**By way of further response, and in accordance with Fed. R. Civ. P. 33(d), please refer to the documents and communications produced and to-be produced during the discovery phase of this case.**

16. State in detail the injury or damage which you allege you sustained as a result of the actions or omissions on the part of the Distinctive Development Defendants.

**RESPONSE: Treeline has sustained in excess of $14,063,338.49 in damages. By way of further response, please refer to Treeline's Rule 26(a)(1) Initial Disclosures and the documents produced contemporaneously therewith.**

17. Identify any actions or inactions by Chris Hoard which have caused any of your alleged damages you are seeking in this matter and quantify such damages.

**RESPONSE: Chris Hoard's actions and inactions, both in his individual and corporate capacity, caused or contributed to cause all of Treeline's alleged damages set forth above. Mr. Hoard represented that he,**

DLD, and Distinctive Living and their "partners" had the ability to manage every phase of the project from market research through operations. Mr. Hoard specifically represented that he, DLD, and Distinctive Living would be independent agents, advisors, and advocates who would act solely in Treeline's best interests. Mr. Hoard and Mr. Jedlowski recommended BKV be retained as the architect and specifically represented that they had worked with BKV on projects in the past and that BKV was well suited for this Project. Mr. Hoard, and others affiliated with DLD, had an obligation to serve as "quarterback" for Treeline and to be Treeline's "advocate" and act in Treeline's "best interest." Instead, Mr. Hoard conspired with Mr. Banta and BKV and others to hide the myriad of serious problems with the site, BKV's work, and the ultimate financial feasibility of the Project. When Treeline began to raise concerns, Mr. Hoard, along with others, falsely and affirmatively stated to Treeline that these were ordinary "hiccups" in a ground-up construction project and that the issues would be resolved in due course and on budget. Mr. Hoard continued to press Treeline to move forward with the Project from the fall of 2023 through 2024 when he knew that there were serious questions as to the feasibility of the Project. Mr. Hoard concealed these issues, minimized their impact, or claimed to be working on a solution to them in order to induce Treeline to continue moving forward with this Project, and potentially other projects, for the benefit of BKV, DLD, and Distinctive Living. This included, but is not

20

limited to, Mr. Hoard, Mr. Jedlowski, and DLD providing financial proformas for the Project showing substantial expected profits when they should have instead been disclosing potential problems to Treeline. In hindsight, these proformas were materially inaccurate and were used to induce Treeline into moving forward with the Project.

Treeline requested Mr. Hoard's assistance in working with BKV on BKV's claim for additional payment of invoices in light of the issues with BKV's work. In response, Mr. Hoard instead pressured Treeline to pay BKV. Treeline believes Mr. Hoard's inappropriate actions and inactions were driven by the secret agreement between Plaintiff and the Third-Party Defendants for BKV to make kickback payments in the amount of $140,000.00 to DLD. Almost immediately after Treeline made a substantial payment to BKV in January 2024 at Mr. Hoard's urging, BKV turned around and made a $70,000 payment to DLD, although BKV listed Mr. Hoard as its consultant in its records. This secret agreement and kickback payment taint all of Mr. Hoard's actions and inactions in this matter in both his individual capacity and in his corporate capacity. Mr. Hoard aligned his interests and those of his affiliated companies and partners/principals with BKV's interests instead of with Treeline. This interfered with and undermined Treeline's rights and expected benefits of its contracts with BKV.

By way of further response, please refer to Treeline's Responses to Interrogatory Nos. 6, 7, 9 and 16 above.

By way of further response, discovery is ongoing and Treeline reserves the right to supplement or amend its response to this Interrogatory.

18. Identify any actions or inactions by Joseph Jedlowski which have caused any of your alleged damages you are seeking in this matter and quantify such damages.

**RESPONSE: Upon information and belief, Joseph Jedlowski is an officer, principal, and agent for both DLD and Distinctive Living. Mr. Jedlowski's actions and inactions, both in his individual and corporate capacity, caused or contributed to cause all of Treeline's alleged damages set forth above. Mr. Jedlowski participated in lengthy videoconferences with Daniel Schor and Glenn Schor on January 23, 2023 and then again on February 2, 2023 to induce Treeline into entering into a relationship with the Distinctive entities. Mr. Jedlowski supplemented these conferences with written materials to induce Treeline to move forward with the Distinctive entities.**

**Mr. Jedlowski represented that he, DLD, and Distinctive Living and their "partners" had the ability to manage every phase of the project from market research through operations. Mr. Jedlowski specifically represented that he, DLD, and Distinctive Living would be independent agents, advisors, and advocates who would act solely in Treeline's best**

22

interests. Mr. Hoard and Mr. Jedlowski recommended BKV be retained as the architect and specifically represented that they had worked with BKV on projects in the past and that BKV was well suited for this Project. Mr. Jedlowski, and others affiliated with DLD, had an obligation to serve as "quarterback" for Treeline and to be Treeline's "advocate" and act in Treeline's "best interest."

Throughout 2023 and 2024 Mr. Jedlowski continued to participate in the Project, even listing himself as the sponsor on the proformas and apparently was the source of substantial input for the proformas. Others from Distinctive Living, including George Draghiceanu, supplied substantial information related to operating the completed facility for inclusion within the proformas. Mr. Jedlowski, and others from Distinctive Living at his behest, also advised Treeline on the amenity packages (i.e. salon, gym, food, and beverage service by way of example) that were to be included in the Project and, therefore, within the proformas. Mr. Hoard, Mr. Jedlowski, and DLD provided Treeline with financial proformas for the Project showing substantial expected profits when they should have instead been instead disclosing potential problems to Treeline. In hindsight, these proformas were materially inaccurate and were used to induce Treeline into moving forward with the Project.

In October 2023, Mr. Jedlowski purportedly reviewed the Project and made design recommendations. In the fall of 2023, specifically

23

including early November, Mr. Jedlowski continued to participate in development of the deal structure with Treeline. Shortly thereafter, Mr. Hoard and Mr. Jedlowski involved numerous Distinctive Living employees in the project, including Angela Clark, Deborah Shane, George Draghiceanu, and Linda Anderson.

In January 2024, when Treeline was concerned about obtaining commercially reasonable financing for the Project, Mr. Jedlowski instead represented that good progress was being made, which was intended to and did induce Treeline to move forward. Mr. Jedlowski's email block at this time seemingly listed him as CEO of both DLD and Distinctive Living. Mr. Jedlowski wrote this email within days of DLD receiving the kickback payment from BKV. Mr. Jedlowski knew that BKV, DLD, and Distinctive Living stood to earn substantial profit if the Project moved forward.

Treeline believes that Mr. Jedlowski knew of and actively participated in the secret agreement to exchange the kickback payment. This secret agreement and kickback payment taint all of Mr. Jedlowski's actions and inactions in this matter in both his individual capacity and in his corporate capacity. Mr. Jedlowski aligned his interests and those of his affiliated companies and principals with BKV's interests instead of with Treeline as he was obligated to. This interfered with and undermined Treeline's rights and expected benefits of its contracts with BKV.

By way of further response, please refer to Treeline's Responses to Interrogatory Nos. 6, 7, 9, 16, and 17 above.

By way of further response, discovery is ongoing and Treeline reserves the right to supplement or amend its response to this Interrogatory.

19. Identify any actions or inactions by Distinctive Development which have caused any of your alleged damages you are seeking in this matter and quantify such damages.

**RESPONSE: DLD had a contractual and extra contractual duty to be Treeline's agent, advocate, advisor, project manager, "quarterback," and to act in Treeline's best interest DLD had an obligation to prepare accurate proforma financial projections for the Project; to honestly and fairly recommend and assist in engaging an architect for the Project; to direct, control, and supervise the architect's work; and to timely and accurately disclose BKV's deficient work. Instead, BKV and DLD, and others, entered into a secret agreement to exchange a $140,000 kickback payment. DLD's inappropriate actions and inactions include 1) wrongfully recommending BKV as the architect for this Project for its own financial benefit instead of Treeline's benefit; 2) failing to ensure the accuracy and completeness of BKV's work and disclose any deficiencies in the same; 3) preparing materially inaccurate financial proformas; and 4) concealing or**

25

**affirmatively misrepresenting the status of the design of the Project, the impact of BKV's deficient work, and ultimately that the project was not financially viable.**

**By way of further response, please refer to Treeline's Response to Interrogatory No. 16, 17, and 18 above.**

**By way of further response, discovery is ongoing and Treeline reserves the right to supplement or amend its response to this Interrogatory.**

20. Provide a breakdown for your alleged damages including how you have arrived at your calculations.

**RESPONSE: Please refer to Treeline's Response to Interrogatory No. 16 above as well as Treeline's Rule 26(a)(1) Initial Disclosures and the documents produced contemporaneously therewith.**

21. Identify whether you incurred any monetary damage or penalty when you terminated the purchase contract for the Property.

**RESPONSE: Treeline incurred attorney's fees and costs related to terminating the purchase contract for the Property and the loss of use of that capital. Please refer to Treeline's Response to Interrogatory No. 16 above as well as Treeline's Rule 26(a)(1) Initial Disclosures and the documents produced contemporaneously therewith. By way of further**

Case 5:25-cv-00028-BO-BM    Document 102-5    Filed 03/20/26    Page 27 of 49

response, Treeline expects the response to this Interrogatory to be the subject of expert testimony and disclosure. Treeline reserves the right to and will supplement its response to the extent required by Fed. R. Civ. P. 26(b) and any applicable order from the Court.

22. If you have ever been involved in any other lawsuits, state the name and nature of the lawsuit, the nature of your involvement, the names and addresses of the parties involved, the county and state in which the lawsuit was filed, the docket number, the date the lawsuit was filed, and the outcome of the lawsuit.

**RESPONSE: Objection. Treeline objects on the grounds that said Interrogatory is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Treeline further objects on the grounds that said Interrogatory seeks information that is confidential and prohibited from disclosure. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Within the last five years, Treeline Acquisition LLC has not been substantively involved in any other lawsuits and has not been a party to any settlements, verdicts, or arbitration awards. On occasion Treeline Acquisition LLC has been incorrectly named as a party to a suit and thereafter dismissed.**

27

23.     Explain and describe your position as to whether the conditions of the contract were triggered such that you owe Distinctive Development 1.25% of the architect's proposed construction cost.

**RESPONSE: Objection. Treeline objects on the grounds and to the extent said Interrogatory seeks information obtained in anticipation of litigation and/or trial and protected by the attorney-client privilege or work product doctrine. Without waiving this objection, but subject to it, Treeline responds as follows:**

**DLD did not meet the conditions required by the agreement to earn the aforesaid fee. Moreover, DLD's prior material breaches set forth above, including but not limited to its substantive failure to perform its obligations and its conduct in orchestrating a secret agreement for a kickback payment, in violation of N.C. Gen. Stat. § 14-353, relieved Treeline of any obligations under the DLD contract. In addition to being barred by DLD's prior material breach, DLD's claims are barred by the doctrines of unclean hands, estoppel, illegality, duress, and fraud.**

**By way of further response, please refer to Treeline's Response to Interrogatory No. 17, 18, and 19 above.**

**By way of further response, discovery is ongoing and Treeline reserves the right to supplement or amend its response to this Interrogatory.**

24. Identify all communications, whether verbal or written, you had with Southwest Crossroads Holding, LLC, Rebecca Flowers and/or affiliated company of Southwest Crossroads Holding, LLC, or anyone representing these entities, concerning your interest in the Property, your negotiations to purchase the Property, the Project, the lien filed by BKV, your negotiations to terminate the contract to purchase the Property, and this lawsuit.

**RESPONSE: Objection. Treeline objects on the grounds that's aid Interrogatory is overly broad and unduly burdensome. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Representatives of Treeline spoke with, met in person with, and communicated in writing with representatives of the seller, including Rebecca Flowers and Reid Stephenson regarding the Project and the viability of the Project. Mr. Hoard and others affiliated with DLD and Distinctive Living were present with Treeline for a meeting with Mrs. Flowers on July 27, 2023.**

**Mrs. Flowers was highly skeptical of BKV's designs and DLD's advice about the Project. Mrs. Flowers expressed concern that the Project would not be successful if it were not fully amenitized as originally planned. Mrs. Flowers advised that there were standard rental units all over the Flowers Plantation Project and that this Project could not compete at the rents underwritten by DLD without being far more amenitized and luxurious for the targeted audience. Mrs. Flowers expressed to Treeline that**

Distinctive (she did not differentiate between DLD and Distinctive Living) significantly erred in advising Treeline not to include full meal services as part of the Project. Mrs. Flowers further stated that her own engineer, Mike Stocks, had advised BKV of the problems with its design, including the non-compliance with the fire code, which BKV did not address before performing detailed drawings and invoicing Treeline for extensive fees. Mrs. Flowers advised that Mr. Stocks had a plan for the site that the fire marshal had informally or tentatively approved and which Mr. Stocks offered to share with BKV.

In June 2024, Mrs. Flowers recommended replacing Distinctive with Retirement Living Associates, Inc. and replacing BKV with Mike Stocks as engineer and another architecture firm because of the delays and failures to that point.

Representatives of Treeline spoke with Mike Stocks, who advised that he had spoken with BKV representatives at various times during the Project. Mr. Stocks advised that he discussed his alternative plans with BKV and the process for obtaining various necessary approvals for the Project. Mr. Stocks advised Treeline that BKV was not pursuing the necessary approvals effectively and that he had advised BKV that their plans were not compliant with fire code. Mr. Stocks advised that he attempted on several occasions to direct BKV's efforts to no significant avail.

By way of further response, in accordance with Fed. R. Civ. P. 33(d), please refer to the communications previously produced and to-be produced as part of the discovery process.

25.     Identify all consultants, advisors, architects, engineers, experts, general contractors, financial advisors you used regarding the Project, including those involved in your decision to terminate the Project.

**RESPONSE: Please refer to Answers to Interrogatory Nos. 6, 7, 10, 11, 14, and 15 above. By way of further response: In accordance with Fed. R. Civ. P. 33(d), please refer to the communications previously produced and to-be produced as part of the discovery process.**

## FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  All documents referred to, relied upon, reviewed or referenced in preparing your answers to the Interrogatories.

**RESPONSE: Objection. Treeline Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

2.  All documents identified by you in your answers to the Interrogatories.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

3.  All documents and correspondence between you and the Distinctive Development Defendants related to the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

4. All documents and correspondence between you and any other party related to the Project.

**RESPONSE: Objection. Treeline Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

5. All documents upon which you intend to rely to establish liability, damages or refutation of defenses.

**RESPONSE: Objection. Treeline Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

6.     All photographs or video documentation relating to the proposed location of the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

7.     Copies of any documents to be used as an exhibit for hearing or trial.

**RESPONSE: Objection. Treeline Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

8.     Produce your expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is expected to testify to or may testify in the cause as an expert, including, but not limited to, (a) any and all documents provided to such expert for his/her review; (b) any and all written or oral reports rendered by such expert regarding the subject matter of this litigation; (c) any and all documents reviewed by such expert or which

form the basis for any statement or opinion in each expert report; (d) the curriculum vitae for each such expert; (e) the expert's complete file concerning this matter; and (f) any other communication with such expert.

**RESPONSE: Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Treeline further objects on the grounds and to the extent that said Request seeks information in excess of the scope of permissible discovery set forth in Fed. R. Civ. P. 26. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Treeline has not yet determined which expert(s) it may use at trial to present evidence. All testifying experts will be disclosed in accordance with and to the extent required by Rule 26(a)(2) and any applicable Court order.**

9. Produce a copy of any document, not otherwise produced, which is relevant to this action, or which was consulted, referred to or utilized to respond to these discovery requests.

**RESPONSE: Objection. Treeline Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the**

work product doctrine. Without waiving that objection, but subject to it, Treeline responds as follows:

Please refer to the documents previously produced and/or to-be produced as part of the discovery process.

10. A privilege log describing all documents which have not been produced on the grounds of attorney-client privilege. The log should describe any withheld documents sufficiently to determine whether it is subject to privilege and should include the identity of the author of the document and the date that the document was created or finalized.

RESPONSE: The only relevant and responsive documents withheld have been communications between Treeline and its counsel.

11. All correspondence with Southwest Crossroads Holding, LLC, Rebecca Flowers and/or affiliated company of Southwest Crossroads Holding, LLC, or anyone representing these persons or entities, concerning your interest in the Property, your negotiations to purchase the Property, the Project, the lien filed by BKV, your negotiations to terminate the contract to purchase the Property, and this lawsuit.

RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.

36

12. All of your internal correspondence regarding the Project, the Property, Distinctive Defendants, Distinctive Living LLC, and BKV.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

13. All analysis and communications regarding your decision to not move forward with the Project.

**RESPONSE: Objection. Treeline Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

14. All communications with The Douglas Company including all correspondence, cost estimates, proposals, and contracts.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

37

15.     All communications with any engineering company, architectural firm, general contractor, financial advisor, or other consultant regarding the Project.

**RESPONSE: Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Treeline further objects on the grounds and to the extent that said Request seeks information in excess of the scope of permissible discovery set forth in Fed. R. Civ. P. 26. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process. By way of further response, Treeline responds that all retained experts expected to testify at trial will be disclosed to the extent required by and in accordance with Rule 26(a)(2).**

16.     Produce all communications with any local authority or permitting authority regarding the Property or the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

38

17. Produce all pro forma, feasibility analysis, financial analysis, and related documents you have for the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

18. Produce all estimates you have related to the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

19. Produce all schematic designs, site plans, surveys, and renderings you have for the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

20. Produce all notes, logs, meeting minutes, site visit reports, inspection records, progress reports, field notes, test reports, assessments, zoning documentation, or internal memoranda you have relating to the Project or the Property.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

21. Produce all documents which document or tabulate your alleged damages.

**RESPONSE: Objects on the grounds and to the extent said Request seeks information obtained in anticipation of litigation and trial and protected by the attorney-client privilege and/or the work product doctrine. Treeline further objects on the grounds and to the extent that said Request seeks information in excess of the scope of permissible discovery set forth in Fed. R. Civ. P. 26. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Please refer to the documents previously produced and/or to-be produced as part of the discovery process. By way of further response, Treeline responds that all retained experts expected to testify at trial will be disclosed to the extent required by and in accordance with Rule 26(a)(2).**

22. Produce all documents relating to you potentially purchasing the parcel adjacent to the Property including but not limited to due diligence documents, pricing information, negotiations, and financing.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

23. Produce all contracts relating to the Property or the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

24. Produce all documents relating to financing for the Project.

**RESPONSE: Please refer to the documents previously produced and/or to-be produced as part of the discovery process.**

## FIRST REQUESTS FOR ADMISSION

1. Admit you ultimately made all decisions about the Project.

**RESPONSE: Objection. Treeline objects on the grounds that said Request is unduly vague. Without waiving this objection, but subject to it, Treeline responds as follows:**

**Treeline admits only that it made decisions on which contracts Treeline would enter and whether or not to proceed with the Project.**

2. Admit you made the decisions on what contracts to enter into regarding the Project.

**RESPONSE: Treeline admits only that it made the decisions on which contracts Treeline entered into as a party to that contract. Upon information and belief, BKV and DLD, and others, entered into various other contracts with each other and with subcontractors or consultants relating to the Project which were not decided upon by Treeline.**

3. Admit there was no requirement for BKV or Distinctive Living Development to tell you about any consulting work either entity performed for each other.

**RESPONSE: Denied.**

4. Admit the Project could have been built on the Property.

**RESPONSE: Treeline denies that the Project as contemplated with the forecasted and necessary rentable units, square footage, parking, and amenities could have been built on the Property at a commercially reasonable cost.**

5. Admit the only reason you terminated the Project was because BKV put a lien on the Property.

**RESPONSE: Denied.**

6. Admit the initial proposal and concept documents were before soil analysis had been done for the Project.

**RESPONSE: Objection. Treeline objects on the grounds that said Request is unduly vague and overly broad. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Treeline admits only that some portion of work was performed before the soil analysis had been done. Treeline states that it disputes that the scope/amount of work that was performed prior to the soil analysis was appropriate. Treeline further states that the soil analysis and site evaluation, including but not limited the December 19, 2023 Terracon report, the Bowman survey, and the content/information contained in BKV's**

May 2, 2024 drawing, should have been obtained before Plaintiff and Third-Party Defendants pushed the Project ahead.

7.      Admit that you were made aware of geotechnical issues with the Project in July 2023.

**RESPONSE: Objection. Treeline objects on the grounds that said Request is unduly vague. Without waiving that objection, but subject to it, Treeline responds as follows:**

**Treeline might have become aware of the existence of the July 17, 2023 Terracon report in or around the July 2023 timeframe, but was relying upon BKV and DLD to advise Treeline of the significance of the contents of that report. Treeline did not become substantively aware of any significant geotechnical issues that would materially or substantially impact the cost of the Project until after Douglas became involved and a second geotechnical analysis was ordered.**

8.      Admit you knew the Project could not be built at 160 units before you signed the AIA contract with BKV in December 2023.

**RESPONSE: Denied. The AIA Contract expressly represented the scope of the design services as including 160 units in an approximately 175,000 sf building. Treeline further states that in February 2024 and April**

**2024, DLD and Mr. Hoard continued to provide financial proformas calling for 163 and 164 units. Treeline relied upon those proformas.**

9. Admit that the Project "penciled".

**RESPONSE: Objection. Treeline objects on the grounds that said Request is unduly vague.**

10. Admit that BKV's proposed construction cost was $28,000,000.

**RESPONSE: Treeline admits only that it was told that the original proposed construction cost would be $28,000,000 but it does not know how that amount was generated or who participated in that estimate.**

11. Admit that the contract amount owed to Distinctive Development for you not going through with the Project is $350,000.

**RESPONSE: Denied. Treeline does not owe Distinctive Development any money, and in fact, Distinctive Development owes Treeline in excess of $14,063,338.49.**

12. Admit that the Project was never permitted.

**RESPONSE: Admitted.**

13. Admit the contract attached as Exhibit A to your Third-Party Complaint is true, accurate, enforceable, and fully executed.

**RESPONSE: Treeline admits only that Exhibit A to the Third-Party Complaint is true, accurate, and fully executed. Treeline denies that DLD can "enforce" the contract against Treeline due to DLD's prior material breach, DLD's claims are barred by the doctrines of unclean hands, estoppel, illegality, duress, and fraud.**

Respectfully submitted this <u>9th</u> day of January 2026.

<i>/s/ Jeffery I. Stoddard</i>
Jeffery I. Stoddard
N.C. State Bar I.D. No.: 56866
email: docket@wardandsmith.com *
email: jistoddard@wardandsmith.com **
Madison B. Waller
N.C. State Bar I.D. No.: 51049
email: mbwaller@wardandsmith.com **
For the firm of Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: 919.277.9100
Facsimile: 919.277.9177
<i>Attorneys for Treeline Acquisition, LLC
d/b/a Treeline Companies</i>

\* This email address must be used in order to effectuate service under the Federal Rules of Civil Procedure.

\*\* Email address to be used for all communications other than service.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of January, 2026, I served the foregoing TREELINE'S RESPONSES TO DISTINCTIVE LIVING DEVELOPMENT LLC'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS AND REQUESTS FOR ADMISSION by electronic mail to the email addresses identified below which are the last addresses known to me:

Amie C. Sivon
John M. Nunnally
RAGSDALE LIGGETT PLLC
Email: jnunnally@rl-law.com
Email: asivon@rl-law.com
*Attorneys for Distinctive Living Development LLC,*
*Christopher Hoard and Joseph Jedlowski*

Daniel G. Katzenbach
CRANFILL SUMNER LLP
Email: dgk@cshlaw.com
*Attorneys for BKV Group DC, PLLC,*
*David Banta and Jack Boarman*

Robert C. deRosset
Matthew C. Burke
YOUNG MOORE LAW
Email: bob.derosset@youngmoorelaw.com
Email: matthew.burke@youngmoorelaw.com
*Attorneys for BKV Group DC, PLLC*

John I. Mabe, Jr.
Meredith Brewer
MAYNARD NEXSEN
Email: jmabe@maynardnexsen.com
Email: mbrewer@maynardnexsen.com
*Attorneys for Distinctive Living LLC*

*/s/ Jeffery I. Stoddard*
Jeffery I. Stoddard

211021-00006
ND:4916-7589-6956, v. 1

48